■ SCOTT HOROWITZ, an Infant, by His Father and Natural Guardian, STEPHEN HOROWITZ, et al., Respondents, v CAMP CEDARHURST AND TOWN AND COUNTRY DAY SCHOOL, LTD., Appellant, et al., Defendants.—In a negligence action to recover damages for personal injuries, etc., the defendant Camp Cedarhurst and Town and Country Day School, Ltd. (hereinafter the camp), appeals from (1) an order of the Supreme Court, Nassau County (McCaffrey, J.), dated January 19, 1984, which conditionally granted the plaintiffs' motion to strike its answer and (2) a further order of the same court (Christ, J.), dated July 31, 1984, which granted the plaintiffs' motion to sever the action as against the camp and for an inquest of damages against the camp, and which denied the camp's cross motion for an order deeming it to have complied with the order dated January 19, 1984.

Orders affirmed, with one bill of costs.

During the summer of 1981, the infant plaintiff, Scott Horowitz, attended Camp Cedarhurst, which was owned and operated by Town and Country Day School, Ltd. On July 29, 1981, Scott allegedly sustained serious injuries when he was "hit, pushed and/or attacked" by the defendant Peter Morton, a fellow camper. At the time of the occurrence, both campers were three years of age.

On November 20, 1981, the plaintiff Stephen Horowitz, Scott's father, commenced the instant action, alleging, inter alia, that the camp was negligent in breaching its duty to provide safe and proper facilities for its campers, in failing to properly supervise the activities of the campers, and "in failing * * * to prevent such a dangerous occurrence from taking place". The complaint further alleged that the camp knew or should have known of the "violent and or 'troublemaking' propensitites of the defendant Peter Morton" in view of previous violent episodes and occurrences in which Peter

was allegedly involved. In its answer dated January 15, 1982, the camp denied those allegations, and, as an affirmative defense, alleged that the infant plaintiff was guilty of contributory negligence.

Subsequently, by order dated May 27, 1982 (Oppido, J.), the camp was directed to produce all files and records pertaining to Peter Morton. These materials were not produced on the designated date, and the plaintiffs obtained a further order dated July 5, 1983 (Berman, J.), which again directed the camp to furnish these files and records. The camp, however, failed to comply with the court's order, and the plaintiffs, by notice of motion dated October 25, 1983, moved, pursuant to CPLR 3126, to strike the answer of the camp on the ground that it had willfully failed to obey outstanding court orders. In opposing the motion, the camp indicated that it had encountered some difficulty in locating the documents which were sought by the plaintiffs. Although nearly 15 months had elapsed since the camp was first ordered to supply the materials in question, it nevertheless failed to disclose what efforts, if any, were expended in attempting to locate them.

By order dated January 19, 1984, the court (McCaffrey, J.), conditionally granted the plaintiffs' motion to strike the camp's answer unless the camp complied with the two prior court orders within 45 days. In response to this order, the camp provided the plaintiffs with some of the requested materials, but persisted in its claim that it was unable to find the records of Peter Morton. Notably, the camp was able to produce records relating to the infant plaintiff as well as other campers, but, inexplicably, not those of Peter Morton.

The plaintiffs subsequently moved for an order severing their action against the camp from that against the defendant Peter Morton, and further requested that the court grant them permission to proceed to an inquest of damages against the camp. The court (Christ, J.), by order dated July 31, 1984, granted the motion. These appeals ensued.

The camp's continuous failure to comply with numerous court orders directing the production of certain discovery materials justified striking its answer. In an effort to obtain the materials to which they were duly entitled, the plaintiffs were compelled to seek court assistance on three separate occasions. While the existence of three outstanding court orders did prompt the camp to provide the plaintiffs with some of the materials sought, certain critical documents, particularly the records and files of Peter Morton, were never produced. Although the camp was given numerous opportuni-

ties to justify its failure to comply with the plaintiffs' valid discovery demands, no satisfactory explanation was proffered. There was no attempt on the part of the camp to explain why the files essential to the resolution of this case were missing, whereas other files were available, and why the files were first alleged to be missing nearly two years after the inception of the action.

Under the circumstances of this case, the camp's successive failures to respond to the plaintiffs' discovery requests, as well as the court-ordered enforcement thereof, constituted the type of dilatory and obstructive conduct which justified striking its answer (see, Ferraro v Koncal Assoc., 97 AD2d 429; Beetz v City of New York, 73 AD2d 925; Sony Corp. v Savemart, Inc., 59 AD2d 676). Mangano, J. P., Thompson, Brown and Eiber, JJ., concur.